UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TAMMI BYNUM,

    Plaintiff,

v.                                              Case No. 8:24-cv-2766-CPT

FRANK BISIGNANO,
Commissioner of Social Security,[1]

    Defendant.
_____/

**O R D E R**

Before the Court is the Plaintiff's unopposed amended motion for attorneys' fees pursuant to the Equal Access to Justice Act (EAJA or the Act). (Doc. 23). For the reasons discussed below, the Plaintiff's motion is granted in part and denied in part.

I.

The Plaintiff initiated this action in November 2024 seeking judicial review of the Commissioner's decision denying her application for Disability Insurance Benefits. (Doc. 1). In March 2025, the Court reversed the Commissioner's decision and

---

[1] Mr. Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Federal Rule of Civil Procedure 25(d), Mr. Bisignano is substituted for the former Acting Commissioner, Mr. Leland Dudek, as the Defendant in this suit.

remanded the case for further proceedings. (Doc. 18). The Clerk of Court entered Judgment for the Plaintiff several days later. (Doc. 19). The instant motion, uncontested by the Commissioner, followed. (Doc. 23).

## II.

The EAJA authorizes a court to grant attorneys' fees to any party prevailing in litigation against the United States (including proceedings for judicial review of agency action), unless the court determines that the government's position was "substantially justified" or that special circumstances exist which make such an award unjust. 28 U.S.C. § 2412(d). To warrant the issuance of fees under the Act, three conditions must be met: (1) a party must file a fee application within thirty days of the final judgment; (2) a party must qualify as the prevailing party and her net worth must not have exceeded $2,000,000 at the time she commenced the action; and (3) the government's position must not have been substantially justified and there must be no other special circumstances that would render such an award unjust. *Id.*; *Patton v. Berryhill*, 2017 WL 6520474, at *1 (M.D. Fla. Dec. 18, 2017) (citing *Myers v. Sullivan*, 916 F.2d 659, 666–67 (11th Cir. 1990)).

Each of these conditions has been satisfied here, as the Commissioner effectively acknowledges by his lack of opposition. Thus, it is appropriate to grant attorneys' fees pursuant to the EAJA in this case.

In assessing the fees to be authorized, courts look to subsection 2412(d)(2)(A), which provides, in pertinent part:

> The amount of fees [to be] awarded [to the prevailing party in any civil action brought against any agency or any official of the United States] shall be based upon [the] prevailing market rates for the kind and quality of the services furnished, except that . . . attorney[s'] fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A).

As reflected by this statutory language, an analysis of the proper hourly rate under the Act consists of two steps. First, a court must ascertain the market rate for similar services provided by lawyers of comparable skill, experience, and reputation. *Meyer v. Sullivan*, 958 F.2d 1029, 1033 (11th Cir. 1992) (quoting *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)). Second, if the prevailing market rate is more than $125 per hour, a court must decide whether to adjust the hourly rate for an increase in the cost of living or some special factor. *Id.* at 1033–34.

The market rate during the relevant period for the type of work at issue in this case is not subject to precise calculation. In the Court's experience, counsel submitting EAJA fee petitions for services performed since 2020 have typically sought hourly rates exceeding $200. As a result, the hourly rate charged by competent attorneys in this market has, for some time, surpassed the statutory cap of $125. The Court is not alone in this observation. *See, e.g.*, *Roman v. Comm'r of Soc. Sec.*, 2024 WL 3046249, at *1 (M.D. Fla. June 18, 2024); *Goldstein v. Comm'r of Soc. Sec.*, 2024 WL 2019866, at *1 (M.D. Fla. May 7, 2024); *Burke v. Comm'r of Soc. Sec.*, No. 8:21-cv-1267-MSS-SPF,

(Doc. 25) (M.D. Fla. Apr. 25, 2022), *report and recommendation adopted*, (Doc. 26) (M.D. Fla. May 23, 2022); *Chartier v. Comm'r of Soc. Sec.*, 2022 WL 1289335, at *2 (M.D. Fla. Apr. 29, 2022); *Britt v. Comm'r of Soc. Sec.*, 2022 WL 358674, at *2 (M.D. Fla. Jan. 27, 2022), *report and recommendation adopted*, 2022 WL 356218 (M.D. Fla. Feb. 7, 2022). The Court therefore finds there is a sufficient basis to deviate upwardly from the EAJA's base fee rate to account for increases in the cost of living.

Courts in this district and elsewhere routinely compute cost of living adjustments under the Act by using the Bureau of Labor Statistics' Consumer Price Index (CPI). *See, e.g.*, *Wilborn v. Comm'r of Soc. Sec.*, 2013 WL 1760259, at *1 (M.D. Fla. Apr. 24, 2013); *Rodgers v. Astrue*, 657 F. Supp. 2d 1275, 1277 (M.D. Fla. 2009); *Morrison v. Astrue*, 2010 WL 547775, at *2 (S.D. Fla. Feb. 12, 2010);[2] *see also Sprinkle v. Colvin*, 777 F.3d 421, 428 (7th Cir. 2015) (collecting various circuit court opinions utilizing the CPI to evaluate hourly rate adjustments). Given this case authority, the Court finds it reasonable to employ the CPI as a guide for determining cost of living increases under the EAJA. *See* U.S. DEP'T OF LABOR, BUREAU OF LABOR STATISTICS, https://data.bls.gov/cgi-bin/surveymost?bls (last visited June 30, 2025).

Here, the Plaintiff asks the Court to award her $3,676.84 in attorneys' fees for the services her counsel, Sarah Atkins, George Piemonte, and Ellen Moyle, rendered in this action. (Doc. 23-2). According to the Plaintiff's submission, Ms. Atkins, Mr.

---

[2] For a discussion of the CPI data employed by many courts in this Circuit, as well as an explanation of the cost of living adjustment calculation, see *Sensat v. Berryhill*, 2018 WL 5257143, at *6 n.12 (S.D. Fla. Oct. 22, 2018).

4

Piemonte, and Ms. Moyle devoted 1.3 hours, 2.9 hours, and 10.4 hours, respectively, to the case in 2024 and 2025.[3]  *Id*.  The hourly rate requested for all three lawyers is $251.84.  *Id.*.

In light of the Court's knowledge and experience in addressing fee matters, the Court finds that the amount of time expended by each of the above attorneys is both reasonable and adequately bolstered by the record.  *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988); *Barreras v. Comm'r of Soc. Sec.*, 2021 WL 3934269, at *3 (M.D. Fla. Aug. 2, 2021), *report and recommendation adopted*, 2021 WL 3930507 (M.D. Fla. Sept. 2, 2021).  The same is true with respect to the hourly rate claimed by Ms. Atkins.  *See id.*

The hourly rate sought for Mr. Piemonte and Ms. Moyle—neither of whom is admitted to practice in this District and neither of whom appeared pro hac vice—is not so straightforward, however.[4]  *See* (Docs. 23-5, 23-6).  In *Callaway v. Acting Comm'r of Soc. Sec.*, 802 F. App'x 533 (11th Cir. 2020) (per curiam), the Eleventh Circuit ruled that a district court does not abuse its discretion when it reduces the rate for non-admitted counsel to that of a paralegal or law clerk, provided that it first determines

---

[3] Ms. Atkins's work on the suit consisted of preparing the complaint and reviewing the Plaintiff's brief.  *See* (Docs. 1, 23-2).  Mr. Piemonte's contributions to the action were comprised of analyzing the ALJ's decision to determine whether to accept the matter, revising and finalizing the Plaintiff's brief, and reviewing the Commissioner's motion to remand.  (Doc. 23-2).  And Ms. Moyle's time was dedicated to reviewing the record and the hearing transcript, drafting and editing the Plaintiff's brief, and conducting legal research.  *Id.*

[4] The Court denied the Plaintiff's original fee petition without prejudice so she could substantiate her request to recover fees for these non-admitted attorneys at the full EAJA rate.  (Doc. 22).

the prevailing market rate for the services furnished by those non-admitted lawyers "based on their training, skill, and experience." *Id.* at 537; *see also Walker v. Comm'r, Soc. Sec. Admin.*, 844 F. App'x 104, 109–10 (11th Cir. 2021) (per curiam) (finding that the district court did not abuse its discretion in awarding non-admitted attorneys an hourly rate of $125 for purposes of a fee petition brought under 42 U.S.C. § 406(b), given that the nature of their work was "comparable to that of a paralegal and could be compensated accordingly").

In line with *Callaway*, courts in the Middle District of Florida typically assign a paralegal rate to lawyers who do not formally appear in a matter. *See, e.g., Zabala v. Comm'r of Soc. Sec.*, 2018 WL 6589837, at *2 (M.D. Fla. Dec. 14, 2018) ("Consistent with the decisions in other cases throughout this [D]istrict, the [c]ourt applies a paralegal rate to the services of non-admitted attorneys in cases where, as here, admission was never sought.") (collecting cases). Indeed, one court in this District recently ascribed an hourly rate of $125 to Mr. Piemonte over the objection of the claimant in that action. *See Santos v. Comm'r of Soc. Sec. Admin.*, No. 6:24-cv-90-WWB-LHP, at (Doc. 29) (M.D. Fla. May 19, 2025).

To buttress her request for a higher hourly rate in this lawsuit, the Plaintiff submits, among other items, affidavits executed by Ms. Moyle and another attorney, Douglas D. Mahoney. (Doc. 23-7). Ms. Moyle represents in her affidavit that she is a 2002 law school graduate who has focused on disability matters for approximately twelve years and who practices in an "of counsel" position in Mr. Piemonte's law firm. (Doc. 23-6). Mr. Mahoney attests in his affidavit that Mr. Piemonte—who graduated

6

from law school in 1987 and has represented disability claimants for approximately twenty years—is a nationally recognized expert in Social Security disability matters. (Docs. 23-5, 23-7). Mr. Mahoney further opines in his affidavit that Mr. Piemonte and the other lawyers at his firm—presumably to include Ms. Moyle—should be awarded a minimum of $350 per hour for their efforts. (Doc. 23-7).[5]

The Court disagrees. To begin, while both Ms. Moyle and Mr. Piemonte are experienced practitioners who performed much of the work in this litigation, Ms. Atkins still prepared the complaint and reviewed the Plaintiff's brief before it was filed. (Doc. 23-2). Thus, as in *Santos*, both Ms. Moyle and Mr. Piemonte engaged in "essentially the function of highly trained and specialized law clerks" and should be compensated accordingly. *See Santos*, No. 6:24-cv-90-WWB-LHP, at (Doc. 29).

Moreover, the Court finds Mr. Mahoney's suggested "minimum" hourly rate of $350—which is nearly $100 over the rate sought here—unsupported. Notably, neither Mr. Mahoney nor the Plaintiff submitted any case authority indicating that the prevailing market rate for non-admitted attorneys in this District exceeds the EAJA cap of $125, even for those with substantial experience. *Cf. Manning v. Comm'r of Soc. Sec.*, 2025 WL 268264, at *1 (M.D. Fla. Jan. 22, 2025) (approving an hourly rate of $125 for lawyers not admitted to practice in this District); *Wilson v. Comm'r of Soc. Sec.*,

---

[5] Ms. Atkins similarly represents in an affidavit she authored that "the fair market value of attorney services in disability cases in the district court is in excess of $300 per hour" (Doc. 23-4), while Ms. Moyle asserts in her affidavit that the "that the fair market value of attorney services for brief writing in the district court is in excess of $250 per hour" (Doc. 23-6).

7

2024 WL 1555372, at *6 (M.D. Fla. Apr. 10, 2024) (same); *Murray-Lee v. O'Malley*, 2024 WL 1328443, at *1 (M.D. Fla. Mar. 28, 2024) (same); *Taylor v. Comm'r of Soc. Sec.*, 2023 WL 4082125, at *1 (M.D. Fla. June 20, 2023) (same); *see also Melgar v. Comm'r of Soc. Sec. Admin.*, 2020 WL 13413445, at *4 (M.D. Fla. Oct. 6, 2020) (awarding an hourly rate of $125 for a non-admitted attorney with twenty years of experience).[6]

In sum, the Court finds that an hourly rate of $125 for Ms. Moyle and Mr. Piemonte is appropriate in this case given the particular evidence (or lack thereof) furnished by the Plaintiff in her motion. In light of this determination, the Plaintiff is entitled to a reduced fee award of $1,993.79.

### III.

For the reasons set forth above, it is hereby ORDERED:

1. The Plaintiff's amended motion for attorneys' fees pursuant to the EAJA (Doc. 23) is granted in part and denied in part as more fully described above.

2. The Plaintiff shall be awarded attorneys' fees in the amount of $1,993.79.

3. In accordance with *Astrue v. Ratliff*, 560 U.S. 586, 598 (2010), the Commissioner's remittance of this sum shall be made payable to the Plaintiff. If the

---

[6] Although the Plaintiff also relies on the Commissioner's lack of opposition to bolster her request for a higher hourly rate for Mr. Piemonte and Ms. Moyle, binding Eleventh Circuit authority requires that the Court independently determine the prevailing market rate for those attorneys "based on their training, skill, and experience." *See Callaway*, 802 F. App'x at 537.

Commissioner concludes that the Plaintiff does not owe any debt to the government, the Commissioner may honor an assignment of fees to the Plaintiff's lawyers.

SO ORDERED in Tampa, Florida, this 1st day of July 2025.

_____
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record